# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE PEOPLE *ex rel.* Blue Danube Company, Appellant, *vs.* FRED A. BUSSE, Mayor, *et al.* Appellees.

*Opinion filed December 21, 1910.*

1. MANDAMUS—*writ will not be awarded unless the petitioner shows a clear right and a clear legal duty by defendant.* The writ of *mandamus* will be awarded only in cases where the petitioner shows a clear right to the writ and a clear legal duty on the part of the defendant to perform the act sought to be enforced.

2. SAME—*courts do not take judicial notice of municipal ordinances.* One who relies upon his compliance with all municipal ordinances on the subject as entitling him to a writ of *mandamus* to compel city officers to issue a certain permit and license must allege and prove the ordinances as matters of fact, as courts do not take judicial notice of municipal ordinances.

3. SAME—*what averments in mandamus petition are mere legal conclusions.* Averments in a *mandamus* petition that petitioner's proposed building is to be constructed of such material and in such a manner as to meet all the building requirements of the city, and that the plans and specifications which were submitted to the mayor and commissioner of public buildings showed that the proposed building complied with all the building requirements fixed by the ordinances, are mere legal conclusions, which are not admitted by the demurrer and cannot be considered in determining whether the petitioner has shown a right to the writ.

4. SAME—*what must appear before petitioner is entitled to writ.* Before a petitioner can be entitled to a writ of *mandamus* compelling the mayor and commissioner of buildings to issue a permit to erect a building and a license to conduct a dance hall therein, the petition must not only show that the ground upon which the defendants' refusal was based was not a legal excuse, but also that the petitioner has complied with all the valid requirements of the ordinances entitling him to such permit and license.

5. SAME—*Chicago ordinance contemplates erection of building before an amusement license is issued.* The Chicago ordinance of December 17, 1909, classifying amusements and providing for a license therefor, and which authorizes a license to issue after the place where the amusement is to be conducted has been examined and is certified by the building commissioner, city electrician and fire marshal as complying with all the ordinances relating to the subject, contemplates that a building or enclosure shall be erected before the mayor can be compelled to issue a license to conduct an amusement therein.

6. SAME—*averment of reason for refusal does not supply want of allegations showing petitioner's right.* An averment in a *mandamus* petition of the reason for the defendants' refusal to issue a certain permit and license does not supply the want of allegations showing that the petitioner has complied with all the conditions precedent to his right to have such permit and license issued.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

STEDMAN & SOELKE, for appellant.

EDWARD J. BRUNDAGE, Corporation Counsel, WILLIAM S. STAHL, and JOHN J. BEILMAN, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellant, the Blue Danube Company, filed a petition for a writ of *mandamus* in the circuit court of Cook county against the appellees, Fred A. Busse, mayor of the city of Chicago, and Murdoch Campbell, commissioner of buildings, to compel the appellees to grant appellant a permit to erect a building at 4318 Indiana avenue, in the city of Chicago, and for a license to conduct a ball room or dance

hall therein. Appellees demurred to the petition, the demurrer was sustained, and appellant having elected to stand by its petition, judgment was rendered on the demurrer in favor of appellees, from which judgment appellant has prosecuted an appeal directly to this court, the trial judge having certified that the validity of a municipal ordinance is involved and that in his opinion the public interest requires that the appeal should be taken directly to this court.

The petition for the writ alleges that appellant is a corporation organized under the laws of this State and is authorized to operate and conduct dances and amusements; that on December 21, 1908, the common council of the city of Chicago adopted an ordinance, which is set out *in hæc verba* in the petition, and which, in substance, makes it unlawful for any person, firm or corporation to construct on any street in the city, in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building for a theatrical, dramatic or operatic entertainment, show, amusement, game or public exhibition of any kind intended or calculated to amuse, instruct or entertain, where the same is given for gain or for admission to which the public is required to pay a fee, without the written consent of a majority of the property owners, according to frontage, on both sides of such street, which written consent is required to be filed with the commissioner of buildings before a permit can be issued for the construction of any such building. The petition further alleges that said ordinance is in full force and effect; that appellant is the owner of a certain lot, which is described, known as No. 4318 Indiana avenue, in the city of Chicago, and proposes to erect and maintain a suitable and first-class building and ball room thereon for the purpose of conducting and operating dances therein and to charge the public a fee for admission thereto; that on May 2, 1910, appellant made a demand upon appellees for a permit and license for the erection and

operating of the building and ball room above described; that plans and specifications were submitted which show the building proposed to be erected to be in complete compliance with all the building requirements of the ordinances of the city, and that it thereupon became the duty of appellees to issue a permit or license to appellant for the erection of said building; that said building is to be constructed of such material and in such a way as to completely and adequately meet with the building requirements of the city of Chicago; that there was no frontage consent obtained or presented with the request for said permit and license; that a majority of the buildings within the block in which said building is proposed to be located are used for residence purposes, and that the appellees refused to honor the request and demand for such permit and license for the reason that there was no frontage consent procured and filed with the application for said permit and license, as required by said ordinance; that said ordinance is unreasonable, null and void, and that the city has no power to pass any valid ordinance requiring that frontage consents shall be secured as a condition precedent to the erection by appellant of said building and the operation of a dance hall therein; that it is necessary to procure a building license or consent to erect said building, and without the same appellant would not be authorized legally to erect and maintain the same.

The petition further shows that on December 17, 1909, the city adopted another ordinance, effective after January 1, 1910, which is also set out *in hæc verba,* and which expressly repeals the above ordinance of December 21, 1908. The ordinance of December 17, 1909, divides into twenty-one classes all theatricals, shows and amusements offered, operated, presented or exhibited for gain or for admission to which the public is required to pay a fee, the fifth of such classes being, "dances, amateur theatrical entertainments, bazaars and other entertainments of like character

carried on or engaged in in any hall, structure or building."
The ordinance makes it unlawful to give, conduct, produce,
present or offer for gain or profit any of the entertain-
ments mentioned in the first eleven classes anywhere within
the city excepting in a duly licensed place, and requires any
person or corporation desiring such license to make appli-
cation in writing to the mayor, setting out, if a corpora-
tion, the full name and residence of its principal officers, a
description of the place for which a license is desired, a
statement of the class of entertainment which it is intended
to produce, offer or present at such place, the highest price
to be charged for admission to any entertainment offered
or presented at such place, and the seating capacity of such
place; whereupon the mayor is required to make, or cause
to be made, an examination of the place where the enter-
tainment is to be conducted, and if all the provisions of
this ordinance, and of all ordinances of the city of Chi-
cago relating to the giving of entertainments and of the
location, construction and maintenance of the places with-
in which such entertainments are given, are complied with,
and if the commissioner of buildings, the city electrician
and the fire marshal shall so certify, the mayor is required
to issue, or cause to be issued, the license for which appli-
cation is made, upon the payment of the license fee fixed
by the ordinance, which for entertainments of the fifth class
ranges from $25 to $100 per annum, the amount in a par-
ticular case depending upon the seating capacity or floor
space of the room or building in which the entertainment
is to be held. This ordinance also provides that where the
proposed place is on a street in any block in which two-
thirds of the buildings on both sides of the street are used
exclusively for residence purposes, before any license shall
be issued for any of the entertainments enumerated in cer-
tain classes, including the fifth class, at such place, the appli-
cant shall obtain and file with the department of buildings
the written consent of a majority of the property owners,

according to frontage, on both sides of such street in such block.

A writ of *mandamus* will be awarded only in cases where the party applying for the writ shows a clear right to it and a clear legal duty on the part of the defendant to perform the act sought to be enforced. (*People* v. *Illinois Central Railroad Co.* 241 Ill. 471; *People* v. *Rose,* 225 id. 496; *People* v. *Rose,* 211 id. 252.) It appears from the petition that the ordinance of December 21, 1908, which required the written consent of a majority of the property owners on both sides of the street before a permit could be issued for the construction, in residence districts, of any building to be used for the purposes specified in the ordinance, has been repealed by the ordinance of December 17, 1909, and that the latter ordinance contains no such requirement. The application by the appellant for a permit and license was made after the latter ordinance had become effective, and its right to the writ of *mandamus* is in no manner dependent upon the provisions of the former ordinance. The petition alleges that it is necessary to procure a building license or consent to erect the building which appellant desires to erect, and that appellant would not be authorized legally to erect and maintain such building without obtaining such license or consent; that appellant made a demand upon the mayor and commissioner of buildings for such permit and submitted plans and specifications which showed that the building proposed to be erected complies with all the building requirements of the ordinances of the city, and that it thereupon became the duty of appellees to issue such permit. The provisions of the ordinances of the city relating to the erection of buildings are not set out in the petition, nor does the petition show what requirements of the ordinances of the city must be complied with before the applicant becomes entitled to such permit. Courts do not take judicial notice of a municipal ordinance, but the party relying thereon must allege and prove it as a matter of

fact. (*Stott* v. *City of Chicago,* 205 Ill. 281.) If there is in force in the city of Chicago an ordinance requiring a permit from the appellees before the appellant can lawfully erect the building in question, the appellant must plead such ordinance in order to show a legal duty on the part of appellees to issue the permit, and must also plead the ordinances of the city containing requirements with which the appellant must comply before it becomes entitled to such permit, and state facts showing compliance with all the requirements of such ordinances, in order to show a clear right on the part of appellant to demand said permit. The allegations that the proposed building is to be constructed of such material and in such manner as to meet all the building requirements of the city, and that the plans and specifications which were submitted to the mayor and commissioner of buildings showed that the proposed building complied with all the building requirements of the ordinances of the city, are mere legal conclusions, which are not admitted by the demurrer, and which must be wholly disregarded in determining whether appellant has by its petition shown a clear right to the writ of *mandamus.* (*People* v. *Village of Crotty,* 93 Ill. 180; *Stannard* v. *Aurora, Elgin and Chicago Railway Co.* 220 id. 469; 31 Cyc. 58.) Rejecting the legal conclusions contained in the petition, nothing remains to show any duty resting on appellees to issue the permit or any right on the part of appellant to demand the same.

It appears from the ordinance of December 17, 1909, that it is necessary to obtain a license in order to carry on the business in the city of Chicago in which appellant desires to engage, and that ordinance prescribes certain conditions precedent with which appellant must comply before it can rightfully demand such license. The validity of this ordinance as a whole is not attacked, but appellant in its petition denies that the city has any power to enact any ordinance requiring the consent of property owners in or-

248 — 2

der to obtain a license to conduct a dance hall or ball room in any portion of the city, and thereby inferentially attacks that portion of the ordinance requiring such consent. It is not, however, necessary to consider that provision of the ordinance in order to sustain the action of the court in denying the prayer of the petition, as there are various other conditions precedent prescribed by the ordinance, the validity of which are not questioned, with which, so far as the petition discloses, appellant has not complied. Among such is the requirement that the applicant for such license must make application in writing, setting out, if a corporation, the full name and residence of its principal officers, a description of the place for which a license is desired, a statement of the class of entertainment which it is intended to produce, offer or present at such place, the highest price to be charged for admission to any entertainment offered or presented at such place, and the seating capacity of such place; also the requirement that the mayor shall make, or cause to be made, an examination of the place for which the license is required, and that the commissioner of buildings, city electrician and fire marshal shall certify that the provisions of all ordinances of the city relating to the giving of entertainments, and the location, construction and maintenance of the places within which such entertainments are given, are complied with before any license shall be issued. Neither does the petition disclose that the appellant tendered the fee fixed by the ordinance for the license which it attempted to obtain. The allegation of the petition that appellees refused to honor the request and demand for said license for the reason that there was no frontage consent procured and filed with the application for such license does not supply the want of allegations showing compliance with the conditions precedent above mentioned. The refusal to issue a license may have been based upon that ground, and yet there may have been other reasons why appellant was not entitled to the license. In order to

obtain a writ commanding the mayor to issue a license it must not only appear that the ground upon which such refusal was based was not a legal excuse, but that the petitioner has complied with all the valid requirements of the ordinances and is clearly entitled to the writ. Moreover, the ordinance of December 17, 1909, defines the word "place," as used in the ordinance, as "the theater, opera house, auditorium, hall, park, grounds, gardens, tent or other enclosure within which it is intended to produce, offer or present any such entertainments," and the provision of the ordinance with reference to one of the conditions precedent above mentioned is, that "the mayor shall make, or cause to be made, an examination of the *place* for which such license is desired, and if all of the provisions of this ordinance, and all of the ordinances of the city of Chicago relating to the giving of entertainments and of the location, construction and maintenance of the *places* within which such entertainments are given, are complied with, and if the commissioner of buildings, the city electrician and the fire marshal shall so certify," the mayor shall issue the license, etc. In order to render the provision of the ordinance last quoted effective, the building or structure in which it is intended to produce the entertainment for which a license is sought must have been erected before application can be made for such license, and the ordinance, therefore, necessarily prohibits the issuance of a license for conducting an amusement in a building which has not been erected. The petition shows that the building in which appellant intends to conduct the dance hall or ball room for which it seeks to compel the issuance of a license has not been erected, and the license was properly refused for that reason.

The petition was clearly insufficient, and the circuit court did not err in sustaining the demurrer and entering judgment in favor of appellees. The judgment of the circuit court is therefore affirmed. *Judgment affirmed.*