(No. 14315.—Reversed and remanded.)

JOHN MILLS *et al.* Appellants, *vs.* CHARLES E. WHITE, JR., *et al.* Appellees.

*Opinion filed October 21, 1922.*

1. MANDAMUS—*when allegation in petition to compel issuing of building permit is a conclusion of law.* In a petition for a writ of *mandamus* to compel the issuing of a building permit an allegation that the plans and specifications submitted in the application for a permit conformed in all respects to the requirements of a certain building ordinance is a mere conclusion of law and is not admitted by demurrer.

2. SAME—*what must be shown to compel issuing of a building permit.* A petition for *mandamus* to compel the issuing of a building permit, which pleads the municipal ordinance on the subject requiring the plans and specifications to be filed with the application for a permit and which makes the ordinance, plans and specifications a part of the petition, must show compliance with the provisions of the ordinance in all respects, and that the specifications, as well as the plans, were filed with the application.

3. SAME—*petitioners for a building permit must comply with building code of municipality.* On application for a writ of *mandamus* to compel the issuing of a building permit the petitioners are not entitled to the writ unless they have submitted plans and specifications which in all respects comply with the building ordinances of the city or village wherein the application for the permit is made.

4. SAME—*demurrers may be carried back to petition.* Demurrers to the pleas or answers to a petition for writ of *mandamus* may, on motion, be carried back to the petition and should be sustained if the petition is insufficient.

APPEAL from the Circuit Court of Cook county; the Hon. DONALD L. MORRILL, Judge, presiding.

CHAPMAN, CUTLER & PARKER, (STANLEY RICH, of counsel,) for appellants.

FREDERICK B. HOVEY, and PEARSON, HERRICK & VETTE, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On April 25, 1921, appellants, John Mills and Lottie Mills, applied to appellee Charles E. White, Jr., building commissioner, commissioner of public works and superintendent of water of the village of Oak Park for a permit to construct a fifty-two-apartment building on their lot at the northeast corner of Euclid avenue and Pleasant street, in said village, which has a frontage of 200 feet on Euclid avenue and 174 feet on Pleasant street, to accept and file a bond indemnifying the village against damages which might be occasioned the village during the construction of the building, and for a permit to use the village water in the construction of the building. The applications were denied, and on April 26, 1921, appellants filed their petition for a writ of *mandamus* against White in his several official capacities and against the village of Oak Park, praying for the issuance of the writ, directed to the building commissioner aforesaid, commanding him forthwith to issue the permit to appellants to erect the building upon said lot in accordance with the plans and specifications theretofore presented to him, upon payment of proper fees, and praying for other incidental relief against White in his other official capacities. Appellants joined issue on six denials of appellees of allegations in the petition, and which are referred to as pleas. Appellees filed three other pleas, numbered 7, 8 and 9.

The seventh plea is to the effect that appellants ought not to have the writ because the plans and specifications referred to in the petition therein set forth do not in all respects conform to the requirements and provisions of chapter 21 of the Oak Park code as amended, and do not provide for the erection of a building in all respects complying with the provisions of said code. Appellants demurred specially to this plea upon the ground that it was informal and insufficient because it did not set forth specifically in what respects the plans and specifications failed

304—17

to comply with the requirements, and to provide for the erection of a building complying therewith.

The eighth plea alleges that in the territory adjacent to appellants' lot there are thirty residences, ranging in value from $10,000 to $60,000; that there is no unimproved land in said territory except appellants' and one other 50-foot lot; that the erection of the proposed building would seriously and unquestionably reduce the value of said residence property and cause large financial loss to the owners thereof. It further alleges that the erection of a fifty-two-apartment building would result in the parking of many automobiles along the streets in front of the building and thereby impede and hinder the passage of fire-trucks along the street, and that Euclid avenue is a street used for the main traveled route for fire-trucks going to fires in the south part of the village; that after considering the foregoing matters the board of trustees of the village passed a resolution instructing White, as building commissioner, not to issue a permit for the erection of an apartment building on appellants' property because it would be inequitable and injurious to the public interest. Appellants specially demurred to this plea, charging that it was a mixture of allegations in the nature of facts and conclusions of the pleaders, and that it was argumentative and tendered no issue of facts.

The ninth plea is a plea *puis darrein continuance.* It sets up as a defense that on May 19, 1921, an ordinance was passed by the village of Oak Park pursuant to the power conferred upon the village under the Zoning law (Laws of 1919, p. 262,) and became effective on May 31, 1921. The ordinance is set forth in full, and the provisions thereof affecting appellants and here involved are the following in substance:

Section 1 defines the term "residence" as a dwelling to be occupied by not more than one family, and the term "apartment building" as a tenement house to be occupied

by more than one family.   Section 2 establishes four classes
of restricted districts in the village:   (*a*) Residence dis-
tricts;  (*b*) apartment districts;  (*c*) commercial districts;
(*d*) industrial districts.   Section 3 provides that all build-
ings erected in residential districts shall be used exclusively
as residences and the usual accessories located on the same
lot.   Churches, educational institutions, clubs, police and
fire departments may be erected and maintained in resi-
dence districts.   Sections 4, 5, 7, 8, 12, 13, 15, 16 and 17
limit in the various districts the size and height of build-
ings which may be erected in the four classes of districts
and establish building lines for such districts.   The limita-
tions in the respective districts are shown by the follow-
ing tabulation:

| Residential | Apartment | Commercial | Industrial |
|---|---|---|---|
| Maximum per cent of lot area coverable.......30% | 66% | 100% † | 75% |
| Maximum height.......35 ft.* | 45 ft. | 80 ft. | 50 ft. |
| Building lines— | | | |
| Front ..............25 ft. | 10 ft. | ..... | ..... |
| Side ................ 3 ft. | ..... | ..... | ..... |
| Rear ..............20 ft. | 10 ft. | ..... | ..... |

*Except churches, 60 feet.  †Less courts.
Towers and spires in any district to any height, provided great-
est horizontal dimension is not more than one-fourth of maximum
frontage of building.

Section 6 provides that all buildings erected in apart-
ment districts shall be used as dwellings, apartments, ho-
tels, lodging or boarding houses, with the usual accessories.
Apartment districts may also be used for the same purposes
as residential districts.   Section 9 provides that in no dis-
trict shall a dwelling be erected on a lot in such a way as
not to have direct access, at least 20 feet in width, to the
street unless a special permit is obtained from the board of
trustees with the approval of the zoning commission.   Sec-
tion 18 provides that present uses may be continued unaf-

fected by the ordinance, and that nothing therein contained shall require any change in the plans of construction or designed use of a building for which a permit has theretofore been issued. Section 20 creates and establishes the following restricted residential district: "Lots fronting on Euclid avenue between the center line of the alley first south of and parallel to South boulevard and the center line of Randolph street." The following plat shows the restricted district and that it includes appellants' property in question:

x Not included

Appellants demurred specially to the ninth plea upon the grounds that the ordinance was not in effect at the time of their application for a building permit or at the time that they filed their petition herein; that it is void because not a proper exercise by the village of its police powers; that it is unreasonable, discriminatory and void because it applies only to a small part of the village; that it is void because not a proper exercise by the village of any power granted by the Zoning law; that it is void because unconstitutional and contravenes sections 2 and 13 of article 2 of the constitution of Illinois and the provisions of the fourteenth amendment to the Federal constitution; because the Zoning law is unconstitutional and void and contravenes said sections of the State and Federal constitutions. Upon motion of the appellees the demurrers to the three pleas were carried back to the petition. The demurrer to the petition was overruled. The court then overruled the demurrers to the seventh and ninth special pleas and sustained the demurrer to the eighth plea. Before the entry of the

order of the court overruling the demurrers to the seventh
and ninth pleas, the appellants moved for leave to withdraw
their demurrer to the ninth plea and to file four replications
thereto and presented to the court the replications proposed
to be filed. The first proposed replication raises the defense
that section 20 of the ordinance establishing the restricted
residential district is discriminatory, and therefore void be-
cause it applies to less than two per cent of the territory
comprising the village, and that the class, character and use
of the buildings and improvements on the land situated in
the restricted district are not different from those of the
buildings and improvements and the lands in other locali-
ties within the village, thereby raising a question of law
based upon a question of fact which is also raised by the
plea. This pleading also raises other questions of discrimi-
nation, charging the provisions of various sections of the
ordinance discriminate between dwellings to be occupied by
one family and dwellings to be occupied by more than one
family; that they discriminate against apartment buildings
and in favor of commercial buildings; that section 8 dis-
criminates in favor of holders of building permits issued
prior to the passage of the ordinance and against the ap-
pellants, whose application for a permit was made prior to
the passage of the ordinance; that they deny appellants the
right to erect an apartment building on their land and do
not prohibit owners of property in other parts of the village
in which the class, character and uses of the buildings are
the same as within the district created, from erecting apart-
ment buildings. The second replication sets up that the
ordinance is void because it is not a proper exercise of any
power granted by the Zoning law, or of the exercise of the
police power, or of any other power of the village. The
third and fourth replications challenge the constitutionality
of the Zoning law. On June 25, 1921, the court overruled
said motion, and appellants having elected to stand by their
demurrers to said pleas, the court dismissed the petition and

entered judgment for costs against the appellants. Appellants duly excepted and prayed an appeal.

On June 28, 1921, there was passed and approved by the legislature a new Zoning law, which became effective July 1, 1921. Section 5 (the last section of the act) expressly repeals the prior act of June 28, 1919, and then proceeds with these provisions: "This repeal shall in no way affect the validity of steps taken or acts done under the act so repealed. No acts done in compliance or supposed or attempted compliance with the act so repealed shall be rendered void or of no effect because of omissions, defects or irregularities, if such acts are in compliance with the requirements of this act." (Laws of 1921, p. 182.) On July 15, 1921, and within the term of court at which the order overruling the demurrer to the ninth plea and dismissing the petition was entered, appellants moved the court to vacate said order and for leave to withdraw their demurrers and amend their petition, and presented the amendments proposed to be filed. These amendments set up the passage of the proposed ordinance of the village, setting out the same in full; the matters attempted to be raised by the replication; the enactment of the Zoning law of 1921 and the repeal thereby of the Zoning law of 1919, and raised the question of the constitutionality of the Zoning law of 1921 upon the ground that it violates the constitution of Illinois and the Federal constitution, setting forth specifically the sections of the constitutions alleged to be violated. The court denied the motion, and appellants excepted and prayed an appeal. The court certified that the validity of a municipal ordinance was involved and that the public interest required that the appeal be taken directly to the Supreme Court.

The questions presented by the record pertain solely to questions of pleading and to the correctness of the court's rulings on the pleadings of the parties and on the motions of appellants to withdraw their demurrers and amend their

pleadings. We have set out rather fully the record bearing upon these questions and the substance of the pleadings and of the motions so that the questions involved may be readily comprehended.

Appellees question by their cross-errors the rulings of the court in sustaining the sufficiency of the petition and in sustaining the demurrer to the eighth plea. Appellants contend that the seventh plea is bad and that the court erred in overruling their demurrer to this plea. They also make the same contention as to the ninth plea and as to the action of the court in overruling their· demurrer thereto, and also discuss in their brief and argument the validity and constitutionality of the ordinance of the village and the Zoning laws passed by the legislature.

The petition alleged that the plans and specifications submitted by appellants in their application for a permit to erect their building in all respects conformed to the requirements and provisions of chapter 21 of the Oak Park code as amended, and provided for the erection of a building in all respects complying with the provisions of said chapter. It is the contention of appellees that the foregoing allegation is a mere conclusion of law and was therefore not admitted by the demurrer carried back to the petition. A like contention was sustained by this court in the case of *People* v. *Busse,* 248 Ill. 11. But the sufficiency of the petition is not to be determined, in the particular named, by the allegation alone. Appellants pleaded the ordinance of the village bearing upon the question of the proper character and contents of the plans and specifications to be filed with the petition for a permit to build an apartment building, and also pleaded the plans and specifications submitted by them for such permit and made the ordinance, plans and specifications a part of the petition. By this manner of pleading all the facts were alleged in the petition necessary to enable the court to determine therefrom the sufficiency of the petition in the particular named. If upon inspec-

tion of the plans and specifications thus pleaded they are found to conform in all particulars to the requirements of the ordinance respecting the character and contents of such plans and specifications required to be filed to obtain a building permit, then it must be held that the petition sufficiently alleges and shows that the plans and specifications submitted do in all respects conform to the requirements of the ordinance, and that such plans and specifications provide for the erection of a building in all respects complying with the provisions of the ordinance.

The real and only question raised by appellees to the sufficiency of the petition is whether or not the petition itself discloses that the plans and specifications filed by appellants with their application for a permit conform to all the requirements of the ordinance aforesaid. The building code of the village specifically provides in section 640 thereof that a permit for the building of an apartment building shall be issued only upon application of the person, firm or corporation for whom the building is to be erected and after approval of the plans and specifications for such tenement house by the building commission. On examination of the exhibits filed with appellants' petition we find that no specifications were filed with the application for a permit. What appellants denominate as their plans and specifications filed with their application for a permit are simply plans for an apartment building, with a few marginal notes thereon in explanation of the plans, and such notes cannot be taken to amount to specifications at all within the meaning of said section. The plans are also inadequate and insufficient in details of construction, as contended by appellees. There is no foundation plan and no roof plan to be found among the plans submitted by appellants. It is also true that there is no rear elevation, no north elevation and no elevation through the south court shown on the plans, and they do not contain any plumbing diagram. There are many other requirements for such plans and specifications

provided for in the building code that are not conformed to by appellants' plans filed by them.

It will not be necessary to go into all the details of the matters wherein the plans of appellants are insufficient, and we will only quote one section of the building code showing such deficiency. Section 1257 thereof provides as follows: "A copy of the building plans shall be filed with the commissioner of public works before the original plans are approved. Such duplicate shall be on paper or cloth and drawn to a standard scale, showing how all rooms and compartments of the building are to be lighted and ventilated. They shall also show in plans, and in at least one elevation, all drains, soil, waste, vent and re-vent pipes within the building and the location of all plumbing fixtures within the building, the location of the catch-basin (in case one is necessary) outside of the building and its connection to the drainage and sewerage system." It is clear that the plans in question do not conform to the requirements of this section, and particularly with reference to the location of pipes and fixtures as above provided for. It is evident from a reading of the section that it requires a full and complete set of plans and specifications within the full meaning of those terms as understood by experts who are required to make plans and by carpenters and builders who are required to follow them. This court has repeatedly held on application for the writ of *mandamus* in this class of cases, that the petitioners are not entitled to a building permit unless they submit plans and specifications which in all respects comply with the building code of the city or village wherein the application is made. (*People* v. *City of Chicago*, 280 Ill. 576; *People* v. *Busse, supra.*) The demurrers to the pleas were properly carried back to the petition by the court. (*People* v. *Chytraus*, 183 Ill. 190.) As the petition was clearly insufficient in the only particular named by appellees the court should have sustained the demurrer to the

petition, and for the error of the court in overruling the demurrer to the petition the judgment must be reversed.

It is equally clear that the seventh plea of appellees was demurrable for the reasons specified in the special demurrer thereto, but that question does not properly arise in the case in view of our decision that the petition was insufficient.

We do not deem it proper to pass upon the questions raised by the parties by the demurrer to the ninth plea of appellees, as a decision thereon would necessarily touch upon the real merits of the lawsuit in advance of the settling of the pleadings by the parties.

In view of the provisions of the Zoning laws of 1919 and 1921, (which latter law repealed the former, and with a very unusual saving clause,) we think that the court should have allowed the motion of appellants to set aside the judgment and to amend their petition, inasmuch as their contention is that they were in a position to meet all objections to the petition by such amendment. The questions involved in this lawsuit are very important to both parties and to the public generally, and if appellants have really complied with all the provisions of the building code with respect to the plans and specifications filed with their application for a permit, they should be allowed, on the remandment of the case, to amend their petition in any manner they see proper, and to raise, if they desire to do so, the question of the validity of the Zoning ordinance, and also of the two Zoning laws by which appellees seek to sustain that ordinance. In other words, all questions ought to be cleared up so that a final decision may be reached in the case when it is tried again, unhampered by the omission of any question that may have any bearing upon the validity of the ordinance aforesaid.

The judgment of the circuit court is reversed and the cause is remanded, with directions that appellants be allowed to amend their petition as they shall see fit, if they be so advised. *Reversed and remanded, with directions.*