People of State of Illinois ex rel. Emma Dorothy Delgado and E. O. Ek, Appellees, v. Sidney D. Morris, Building Inspector of City of Highland Park and City of Highland Park, Appellants.

Gen. No. 10,172.

Opinion filed June 4, 1948. Released for publication June 25, 1948.

PAUL C. BEHANNA, Corporation Counsel, City of Highland Park, for appellants; RALPH J. BOCHES, of Waukegan, of counsel.

EDWARDS & BLOCK, of Waukegan, for appellees.

Mr. Justice Bristow delivered the opinion of the court.

In a mandamus proceeding instituted by plaintiffs, Emma Dorothy Delgado and E. O. Ek, to compel defendant, Sidney D. Morris, building inspector of the City of Highland Park, Illinois, and the City of Highland Park, to issue a permit for the remodeling of a building, the circuit court of Lake county entered a judgment in favor of plaintiffs, from which defendants appeal.

It appears that plaintiff, Emma Delgado, a nonresident, is the legal owner of the premises in controversy, and plaintiff, E. O. Ek, is the purchaser thereof under an executory contract of sale. The building is approximately 50 years old, and although it was originally constructed as a single family dwelling, it has been allegedly used as an apartment house since sometime prior to 1917 when an annex was added.

In March 1922, the City of Highland Park, pursuant to the authority granted under ch. 24, sec. 73—1 of the Ill. Rev. Stat. [Jones Ill. Rev. Stats. 21.2122], passed a zoning law restricting the area in which plaintiffs' building is situated to residential use, and an amendment to the ordinance in 1929 further restricted the area to use for single family dwellings.

The evidence with reference to the number of apartments and tenants in the building at the time the zoning ordinances were enacted is highly controverted and voluminous. Plaintiffs contend that a non-conforming use of the premises as an apartment building was established, and that they are, therefore, entitled to remodel the building to accommodate five apartments. In support thereof, plaintiffs offered the testimony of former tenants and neighbors, a real estate agent, and a plumber who performed services in the building. In denying plaintiffs' assertions, defendants also submitted the testimony of former tenants and neighbors,

and employees of the gas company, and of the water department.

It appears that some witnesses testified that there were two apartments on the first floor, which had separate sinks, but shared a bath, and three apartments on the second floor with three sinks and two bathrooms, and that each apartment had a separate stove and icebox. In fact, an inventory of the property on the premises at the death of Julia Donsing, the former owner through whom plaintiff Delgado acquired her title, indicated that there were six iceboxes. Some of the tenants provided their own furniture, while others used that furnished by Mrs. Donsing. Other witnesses testified that there were only two apartments on each floor including that occupied by Mrs. Donsing, and there is also testimony that the premises were used only by the owner and two other families, and that after her death only two family units occupied the building.

Between October 1930, and September 1933, the water was turned off, apparently over some controversy about the bill, and the premises were allegedly vacant, but were subsequently occupied by varying numbers of families.

In March 1943, plaintiff E. O. Ek obtained a permit for the alteration of the premises for a two-family dwelling. Inspection thereafter showed that the premises were being altered for four apartments, and the permit was withdrawn. In August 1943, the present application was made for a permit to remodel the premises into five apartments, and upon its refusal these proceedings were instituted.

At the date of the hearing, the building had an appraised value of approximately $3,200, and the estimated cost of remodeling was approximately $7,500.

Defendants contend that plaintiffs do not establish a non-conforming apartment use, and maintain that even if such use were established, it was abandoned and

cannot be resumed under the zoning ordinances. Moreover, defendants insist that the proposed alterations involve an increase in the volume and intensity of use in violation of the zoning ordinances, and that the plans and specifications do not comply with the building code.

Plaintiffs deny each of these contentions and insist that the refusal to grant the building permit is capricious and without legal justification, and therefore warrants the issuance of a writ of mandamus to compel the building inspector to comply with their application.

The trial court entered judgment for plaintiffs and ordered a peremptory writ of mandamus to issue compelling the building inspector to grant plaintiffs the permit to proceed with their proposed construction.

The issue before this court is whether the judgment and order of the court were in error on the ground that the proposed alterations violated the zoning and building ordinances of the City of Highland Park.

██ For a writ of mandamus to issue it must appear that plaintiffs had a clear and undoubted right to the relief demanded. (*People v. Nelson,* 346 Ill. 247.) Where such a writ is sought to compel the issuance of a building permit, plaintiff must show a compliance with all the requirements of the ordinances. (*People v. Chicago,* 280 Ill. 576.)

██ Under ch. 24, sec. 73—1 of the Ill. Rev. Stat. municipal corporations are authorized to promulgate zoning and building ordinances designed to promote the public health, safety, morals and welfare. Such power, however, may not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted.

Pursuant to this authorization the City of Highland Park enacted certain zoning and building codes, including the amendment of 1926 which restricted the

area in which plaintiffs' property is located to single family residences, but contained a proviso for the protection of non-conforming users.

Article VIII, Sec. 1 of the ordinance provides:

"Non-conforming Uses: The lawful use of a building or premises existing at the time of the adoption of this ordinance, or existing at the time of the passage of any amendment thereof, when the effect of such amendment is to render non-conforming a use previously conforming to the provisions hereof may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building or premises lawfully acquired and actually devoted to such use or appurtenant thereto previous to March 24, 1922, or previous to the date of any amendment subsequent to March 24, 1922, when prior to such amendment such use conformed to the provisions thereof. . . ."

 To establish a non-conforming apartment use under the terms of the Highland Park zoning ordinance it must appear that the premises have been devoted to the non-conforming use previous to March 24, 1922, or previous to the date of any subsequent amendment, which, in the instant case, refers to the amendment of 1926. Therefore, the evidence of occupancy as a multiple family dwelling should properly relate to 1926 and prior thereto, and all evidence of use thereafter merely bears upon the question of abandonment.

 Since 1917, when the annex was built, the building in controversy has been used as an apartment house under the terms of the zoning law which defines an apartment as one or more rooms used as a home or residence for one family. As hereinbefore reviewed, the testimony of the witnesses, although conflicting, indicates that the premises were divided into at least three and possibly five separate apartments consisting of from two to four rooms each, and were occupied by distinct family units. These apartments contained a

sink, stove and icebox, and some of the tenants provided their own furnishings. Although two apartments may have shared a bath, and a room of one apartment was across a public hallway, such circumstances merely bore upon the primitive nature of the facilities, rather than on the issue of whether it was an apartment.

■ Defendants urge that even if a non-conforming use of the premises was established, it was abandoned by the non-occupancy from October 1930, to September 1933. To constitute abandonment it must appear that there is an intent to abandon the non-conforming use, and mere cessation of use will not result in a loss of the right to resume such use. (*Landay v. Mac-Williams*, 173 Md. 460, 196 Atl. 293, 114 A. L. R. 984 (1938).)

■ Plaintiffs maintain that the reason the premises were vacant was due to the inability to secure tenants, and while there is a dearth of evidence on that issue, nevertheless, it does not appear that Mrs. Donsing, as owner of the premises, committed any act from which an intention to abandon the non-conforming use of the building as an apartment house, could be inferred.

■ Defendants insist further that the proposed renovation violates the aforementioned ordinance by providing for an increased volume of the alleged non-conforming use. It is not clear to this court upon what clause of the ordinance such an interpretation is predicated. The ordinance merely provides that a non-conforming use may be extended throughout the building or premises, and in no way restricts or prohibits any increase in volume of the non-conforming use. In fact the provision apparently envisages some extensions and additions necessary to maintain the existing non-conforming use.

■ ■ In support of their interpretation of the ordinance, defendants cite *Mercer Lumber Co. v. Village of Glencoe*, 390 Ill. 138, where the court stated

that the power to regulate a non-conforming use included the power to limit the extension of it, and upheld the validity of an ordinance which prohibited a non-conforming user to increase the cubic capacity of the structure in excess of 30 per cent. Admittedly, the City of Highland Park had such authority, but it was not exercised in this particular zoning ordinance, for no limitations were imposed as in the *Glencoe* case; nor can such restrictions against an increase in volume be implied from the mere existence of the zoning plan. Moreover, the decisions of other jurisdictions are of doubtful persuasive value unless it can be shown that the courts construed identical zoning ordinances promulgated under the authorization of identical statutes.

What is contemplated herein is not a new and different use as in *Botz v. Garrett,* 236 Mo. App. 566, 159 S. W. (2d) 367; nor the construction of a structure six times as large as the original building as in *De Vito v. Pearsall,* 115 N. J. L. 323, 180 Atl. 202 (1935). The proposed alterations include mainly the construction of a two-story sleeping porch on the east part of the building in place of the one-story shed; enclosing an open porch; extending the building to enclose the southeast corner formerly occupied by another porch; raising the roof and inserting a dormer, and adding an allegedly fireproof stairway.

Defendants maintain that these plans contemplate a 20 per cent increase in the volume of the premises, whereas plaintiffs argue that the increase is slightly over 10 per cent. Inasmuch as the ordinance does not specifically, or by implication, prohibit any extension in volume, it is immaterial whose calculations are adopted as long as the proposed plans do not change the non-conforming use, or extend it beyond the premises.

Similarly the alleged increase in intensity of use under the contemplated construction does not appear to violate the terms of the zoning ordinance.

There is no prohibition therein against an increase in intensity of use, in fact, the clause authorizing the extension of the non-conforming use throughout the premises may properly be construed as contemplating such an increase in intensity of use by a nonconforming property owner. Admittedly, one of the functions of zoning is to prohibit an undue concentration of people in a given area, nevertheless, merely because an area has been zoned does not justify a court in judicially legislating away the property rights granted to non-conforming property owners under the zoning law, in the absence of a specific restriction in the ordinance against any increase in intensity of use.

It is not clear whether the proposed alterations would actually involve an increased intensity of use inasmuch as there is evidence in the record that when the zoning amendment of 1926 was enacted, and prior thereto, the premises in controversy were divided into five apartments, and occupied by five family units. Obviously the apartments were not as modern or complete as those proposed under plaintiffs' plans and specifications, but the intensity of use may have been equally as great as that contemplated under the proposed alterations.

In view of the foregoing, it appears that plaintiffs' proposed alterations do not violate any of the terms and provisions of the zoning laws of the City of Highland Park. However, before plaintiffs can be deemed to be entitled to a permit for the proposed construction, it is incumbent upon them to show a proper compliance with the requirements of the building code.

Pursuant to the statutory authorization in ch. 24, sec. 73—1 of the Ill. Rev. Stat. the City of Highland Park enacted a comprehensive building code.

Inasmuch as plaintiffs have insisted that the building in controversy is an apartment house for the purpose of establishing a non-conforming use under

the zoning ordinances, it must be so adjudged in determining whether there has been a compliance with the terms of the building code. Under art. XIII, sec. 3, par. 523, a remodeled apartment house is to be construed as a new apartment building insofar as the new elements of the building are concerned.

Plaintiffs argue, however, that it is not necessary for the new elements in the proposed construction to conform to the requirements of the building code pertaining to new apartment buildings, since the repairs are being installed on an old building, and the designated materials are adequate, and the proposed alterations constitute an improvement in the appearance and safety of the premises.

Plaintiffs insist, furthermore, that if the requirements of the code are strictly applied to the instant case they would effect an unwarranted invasion of plaintiffs' property rights, and would, therefore, be unconstitutional. There is not a scintilla of evidence in the record that the requirements are arbitrary, unreasonable or oppressive, or unrelated to the public safety. That the code may render plaintiffs' proposed construction financially inexpedient or difficult is clearly no reason for declaring the provisions unconstitutional.

With reference to the constitutionality of such building ordinances, the Illinois Supreme Court stated in *Hartman v. Chicago*, 282 Ill. 511, 513:

"The extent to which the public safety requires the construction of buildings to be regulated, the materials which may be used and the method of construction are questions which are left to the judgment and discretion of the city council to determine, and unless the exercise of such judgment and discretion is manifestly unreasonable the court will not interfere with it."

Plaintiffs' position with reference to the application of the building code is not only in derogation

of the express terms of art. XIII, sec. 3, par. 523 of the building code, but would constitute a gross miscarriage of justice, and introduce uncertainty and ambiguity into the building ordinances. Clearly, it would be inequitable to permit plaintiffs to extend and remodel the premises on the theory that a non-conforming apartment use had been established, and, at the same time, to allow plaintiffs to take advantage of the original character of the building as a single family dwelling, as far as the standards of construction and the use of materials are concerned.

Furthermore, unless the requirements of the building code are uniformly applied, there are no objective standards by which the building inspector can determine whether or not the proposed construction is adequate and warrants the issuance of a permit, with the result that building standards would vary immeasurably, and public safety would be jeopardized. Therefore, the requirements of the building code cannot be disregarded or compromised on the ground that the premises may be old or involve a non-conforming use.

Under the provisions of the Highland Park building code, it is the primary duty of plaintiffs to present plans and specifications in sufficient detail so that it can be ascertained whether the contemplated construction complies with the requirements of the building ordinances. (*People v. City of Chicago,* 280 Ill. 576; *Mills v. White,* 304 Ill. 256.) Plans and drawings must be drawn to scale, all distances and dimensions must be accurately set forth, and the drawings must indicate the location of all plumbing fixtures as well as the dimensions of all structural members. (Art. III, sec. 13, par. 394.) Statements in the plans and specifications that work will be performed "to the satisfaction of the building inspector," or, "as specified in the code," are deemed indefinite, and such

plans will be rejected and a permit denied. (Art. III, sec. 16, par. 397.)

From the record, it appears that the plans and specifications submitted by plaintiffs were incomplete, and contained specific violations of the building code. The plans and specifications refer to additional plumbing facilities, new bathrooms and kitchenettes, but contain no description of the fixtures, nor of the mode of their installation, except a proviso that all work is to comply with the code requirements—an expression rejected by the code. Similarly the specification that the building is to be rewired, ''as will be approved,'' is likewise contrary to the requirements of the ordinance.

There are no details respecting the new hot water system, except that it is to be for the whole building, and will utilize present pipes and radiators where in good condition and of proper size; the drawings do not indicate where or how the two interior masonry walls on the first and second floor are to be supported; no dimensions are given for the two-story sleeping porch, for the fireproof stairs, for the southeast enclosed porch, or for the new partitions.

Not only are plaintiffs' plans and specifications incomplete, but they specifically violate certain code requirements. The walls dividing the apartments are to be constructed of hollow tile rather than solid masonry as required by the code. (Art. XIII, sec. 27, par. 547.) Moreover, the material for the construction of some of the partitions is not even designated. Furthermore, these walls are not of the prescribed eight inch thickness, (art. XV, par. 588), and they do not extend from the roof to the ground. Nor do the proposed outside walls comply with the twelve inch width requirement.

The proposed common stairway extends on the second floor, over the living room of the apartment below, nevertheless, there is no provision for fireproof-

ing the flooring, which is composed of combustible material. Nor is there any indication whether the walls of the stairway are to be constructed of tile, solid masonry, or combustible material. This entire structure, therefore, violates the code requirements pertaining to common stairways and halls. (Art. XIII, sec. 25, par. 545.)

On the basis of these incomplete and offensive plans and specifications, plaintiffs were clearly not entitled to the issuance of a building permit. In *People v. City of Chicago,* 280 Ill. 576, the court stated at page 580:

"It was not the duty of the commissioner of buildings to approve plans which were not in compliance with the ordinances of the city, and before applying for the writ of mandamus the relator should have tendered the commissioner of buildings plans which complied with the requirements of the ordinances of the city. The writ of mandamus will be awarded only in cases where the petitioner shows a clear right to the writ and a clear neglect of duty on the part of defendant to perform the act sought to be enforced. . . ."

It is the opinion of this court, therefore, that plaintiffs have not established a clear and undoubted right to the writ of mandamus, and the judgment order for plaintiffs of the circuit court authorizing the issuance of such a writ was in error, and should properly be reversed.

*Judgment reversed.*