## CITY OF HUTCHINSON v. LOWELL D. OTTO.

235 N. W. 2d 604.

November 7, 1975—No. 45429.

*Nicklaus & Leatham, Robert A. Nicklaus,* and *William G. Golla,* for appellant.

*Keefe, Schantzen & Bradford* and *Curtis M. Bradford,* for respondent.

Heard before Sheran, C.J., and Otis and Kelly, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Lowell D. Otto appeals from an order of the district court which (1) authorized the city of Hutchinson to raze immediately a building owned by Otto and (2) denied Otto's motions for an order directing the city to issue to him a building permit for the remodeling of his building or, in the alternative, to inform him in writing of the information he needed to submit in order to obtain a building permit. We affirm.

In January 1960, Mr. Otto moved the house in question onto a lot previously owned by him and had it placed on movers' pilings. There was no foundation, and the house was not connected to sewer or water. Thereafter, there ensued a long-lived dispute between Otto and the city as to whether Otto should be issued a building permit which would allow him to build a foundation and a basement for the house and remodel it so that it would be habitable.

In December 1969, the litigation which culminated in the order appealed from was begun when the Hutchinson City Council, acting pursuant to Minn. St. 463.15 to 463.26, issued an order declaring that the house was beyond repair and must be removed by February 1, 1970. The city moved the district court for summary enforcement of that order and Otto counterclaimed, seeking money damages from the city for the destruction of the drainage from his property.

In January 1973, trial was had on the motion for summary enforcement, and in February 1973, the trial court entered an order modifying the order of the city council to allow Otto 6 months to correct the hazardous condition of the building and bring it into compliance with building and zoning codes.

In October 1973, the city again moved for an order authorizing it to raze the house. In January 1974, the trial court entered an order requiring Otto to obtain utility easements to the property and supply to the city by March 1, 1974, copies of contracts for renovations necessary to bring the building up to code.

On May 24, 1974, the city renewed its motion. On May 28, 1974, the trial court entered an order requiring that the city building inspector, on or before May 29, 1974, supply Otto with information regarding the items necessary to be furnished to the building inspector so that he could determine whether a building permit should issue, and requiring that Otto supply that information to the building inspector on or before June 9, 1974. The same day the order issued, Elden Willard, city building inspector, informed Otto by letter that he must submit two copies

of plans and specifications "in sufficient clarity to indicate the nature and extent of the work proposed and show in detail that it will conform to the provisions of the code and all relevent laws, ordinances, rules and regulations." On June 10, 1974, Otto submitted certain documents which he contends were plans and specifications. On June 14, Inspector Willard informed Otto's attorney by letter that the plans submitted were not of sufficient clarity. On June 17, Otto's attorney wrote to Inspector Willard asking him to explain in what regard the plans and specifications were deficient and asking him to pose any specific questions he might have. On June 20, Inspector Willard replied, suggesting that Otto and his attorney see a licensed architect or engineer to have design and drafting work done and stating that his office did not do design work for builders.

On June 28, the city renewed its motion for an order authorizing it to raze the building, and Otto thereafter served and filed a motion for an order requiring the city to issue a building permit or, in the alternative, to furnish Otto with written reasons for its denial of the permit or furnish Otto with information regarding the items necessary to be furnished to the building inspector before the permit could issue. Both motions were to be heard on July 12, but before that date, Otto and his attorney met with Inspector Willard and the Hutchinson city attorney and reached a negotiated settlement, agreeable to all of them. However, the Hutchinson City Council rejected the proposed settlement agreement.

On September 13, Otto renewed his motions of July 12, which had been taken under advisement. After a hearing on the motions of both parties, the trial court, on September 17, 1974, entered the order appealed from.

The issues before us on appeal are:

1. Was the city's failure to issue Otto a building permit until he submitted detailed plans and specification for the proposed work and its failure to explain to him the exact data it wished

included in the plans and specifications arbitrary or unreasonable, or did it deny him equal protection of the laws?

2. Did the statements made by the city attorney in the settlement negotiations of July 1974 estop the city from denying Otto's application for a building permit?

■ Otto's position on this appeal is that he is entitled to a building permit as a matter of right and that the city's action in conditioning the issuance of a permit on his submission of more detailed plans and specifications exceeds the limits of the police power. That the municipal police power is subject to the limitations of due process and equal protection is beyond question. Similarly, there is no question that neither the requirements for obtaining a building permit nor the method of enforcing those requirements may be arbitrary, unreasonable, or discriminatory.[1] When those general rules are applied to the facts of this case, however, we believe that the city acted well within the limits of the police power.

The State Building Code [2] makes the submission of detailed plans and specifications a condition precedent to the issuance of a building permit.[3] Apparently, appellant does not seriously

---

[1] The general principles are well stated in Arcadia Development Corp. v. City of Bloomington, 267 Minn. 221, 125 N. W. 2d 846 (1964).

[2] Minn. St. 16.851, effective July 1, 1972, applies the State Building Code on a statewide basis, superseding all local ordinances.

[3] State of Minnesota, Department of Administration, Building Code Division, Appendix E, states in relevant part:

"1. Applications for Permits

\* \* \* \* \*

"(b) Application. To obtain a permit the applicant shall first file an application therefor in writing on a form furnished for that purpose. Every such application shall:

\* \* \* \* \*

"4. Be accompanied by plans and specifications as required in Subsection (c) of this Section;

\* \* \* \* \*

"(c) Plans and Specifications. With each application for a building permit, and when required by the administrative authority for enforce-

contend that the Code provision is facially arbitrary, unreasonable, and discriminatory. Nor could he do so, as we have previously upheld the constitutionality of very similar regulations. See, State v. Clarke Plumbing & Heating, Inc. 238 Minn. 192, 56 N. W. 2d 667 (1952).[4]

Appellant's main argument is that the plans-and-specifications provisions of the State Building Code are arbitrary, unreasonable, and discriminatory as applied to him. Appellant claims (1) that he did substantially comply with the plans-and-specifica-

---

ment of any provisions of this Code, two sets of plans and specifications shall be submitted. The administrative authority may require plans and specifications to be prepared and designed by an engineer or architect licensed by the state to practice as such.

\* \* \* \* \*

"(d) Information on Plans and Specifications. Plans and specifications shall be drawn to scale upon substantial paper or cloth and shall be of sufficient clarity to indicate the nature and extent of the work proposed and show in detail that it will conform to the provisions of this Code and all relevant laws, ordinances, rules and regulations. The first sheet of each set of plans shall give the house and street address of the work and the name and address of the owner and person who prepared them. Plans shall include a plot plan showing the location of the proposed building and every existing building on the property. In lieu of detailed specifications, the administrative authority may approve references on the plans to a specific section or part of the Code or other ordinances or laws.

"Computations, stress diagrams, and other data sufficient to show the correctness of the plans, shall be submitted when required by the administrative authority."

[4] Several other jurisdictions have held valid requirements that detailed plans and specifications be submitted as a prerequisite to the issuance of a building permit. See, e. g., Mills v. White, 304 Ill. 256, 136 N. E. 741 (1922); People ex rel. Delgado v. Morris, 334 Ill. App. 557, 79 N. E. 2d 839 (1948); Karl V. Wolsey Co., Inc. v. Building Inspector of Bedford, 324 Mass. 419, 86 N. E. 2d 644 (1949); Commonwealth v. Atlas, 244 Mass. 78, 138 N. E. 243 (1923); Forsythe v. Henshaw, 137 N. J. L. 249, 59 A. 2d 617 (1948); Deymann v. Mayor & Aldermen of Jersey City, 5 N. J. Misc. 369, 136 A. 602 (1927).

tions requirement; (2) that the city building inspector unreasonably refused to state objections to the plans and specifications submitted; (3) that the city had some ulterior motive for denying the permit; (4) that no one else was required to submit formal plans; and (5) that the city must issue a permit because it allowed him to have the house moved onto the lot in the first instance.

The trial court rejected Otto's substantial-compliance claim after an evidentiary hearing on the matter. We hold that the record contains ample evidence to support the trial court's finding that the documents submitted by Otto do not comply with the provisions of the State Building Code. The only plans included in the documents are for the deck and basement; no plans for remodeling of the house itself were supplied. No plot plan was included as specifically required by the Code. Of the plans that were submitted, only one was drawn to scale as required by the Code. The balance of the documents submitted by Otto are bids and estimates submitted by plumbers, electricians, and contractors. They do not state in any detail what work is to be done, and the materials to be used are rather generally described. There is ample authority for the proposition that such documents do not comply with a requirement that plans and specifications be submitted with an application for a building permit. See, Mills v. White, 304 Ill. 256, 136 N. E. 741 (1922); People ex rel. Delgado v. Morris, 334 Ill. App. 557, 79 N. E. 2d 839 (1948); Karl V. Wolsey Co., Inc. v. Building Inspector of Bedford, 324 Mass. 419, 86 N. E. 2d 644 (1949). Particularly in light of the fact that the house in question has been at its present location for 15 years, we do not believe that Otto's actions constitute substantial compliance with the State Building Code.

Otto's second contention is that Inspector Willard unreasonably refused to explain the deficiencies in the "plans and specifications" submitted. There is no merit to this contention. We need not decide whether the law imposes such a duty upon the build-

ing inspector [5] for, as noted above, the documents submitted fail on their face to comply with the plain requirements of the Code, a deficiency obvious even to a lay person. Moreover, the State Building Code expressly permits the city to require that plans and specifications be prepared by a registered architect or engineer. Inspector Willard's letter of June 14 had the effect of imposing that requirement. If a trained person is to prepare the documents, there would be no need for the assistance of the building inspector, as "plans and specifications" is a term of art in the construction trade. See, Nevada Bank of Commerce v. Three Seas Corp. 84 Nev. 615, 446 P. 2d 647 (1968).

Next, Otto contends that the city denied his permit in an attempt to subvert zoning ordinances which authorize back-lot construction and that there is a pattern of discriminatory enforcement of the building code. The record, however, fails to support these charges. The only evidence in the record on the point is the testimony of Mr. Otto who stated that he saw some of the other files in the building inspector's office and that he was being required to submit more documentation than those applicants had submitted. Obviously, such evidence falls far short of meeting Otto's burden of proof on these issues.

Finally, Otto argues that because the city granted him a permit to move the house to the lot it is estopped to deny him a permit to remodel the house. Otto cites no authority which supports this unique legal theory,[6] nor are we aware of any which would do so.

In summary, we hold that the strict application of the State Building Code provisions regarding plans and specifications, in

---

[5] There is, however, some doubt as to the existence of such a duty. See, Deymann v. Mayor & Aldermen of Jersey City, 5 N. J. Misc. 369, 136 A. 602 (1927).

[6] Russell Dairy Stores, Inc. v. City of Chippewa Falls, 272 Wis. 138, 74 N. W. 2d 759 (1956), on which Otto relies, held only that where the highway authority had consented to an owner's installation of a driveway to his store it could not later revoke the building permit and require him to tear up the driveway.

light of all of the circumstances in this case, was not arbitrary or unreasonable nor did it deny appellant equal protection of the laws. The city's actions here constituted a proper exercise of the police power.

█ Appellant contends that the city is bound to issue a building permit because of certain statements made by the city attorney during the July 1974 settlement negotiations.[7] This argument is without merit. It is elementary that an attorney's power to bind a client depends upon consent of the client.[8] It is clear from this record that the city council had not given the city attorney such authority, but rather reserved to itself the power to accept or reject the settlement agreement drafted at the settlement conference. Thus, there was no settlement and the statements of the city attorney can give rise to no estoppel.

Affirmed.

---

[7] Otto also claims that the city attorney informed him by letter that the plans and specifications were "satisfactory." The record reveals, however, that this letter did not refer to the plans and specifications, but to certain other documents that Otto was required to submit.

[8] See, e. g., State of Illinois ex rel. Shannon v. Sterling, 248 Minn. 266, 80 N. W. 2d 13 (1956); Albert v. Edgewater Beach Bldg. Corp. 218 Minn. 20, 15 N. W. 2d 460 (1944); Matteson v. Blaisdell, 148 Minn. 352, 182 N. W. 442 (1921); National Council v. Scheiber, 141 Minn. 41, 169 N. W. 272 (1918); Gibson v. Nelson, 111 Minn. 183, 126 N. W. 731 (1910); Miller v. Natwick, 110 Minn. 448, 125 N. W. 1022 (1910); Bates v. Bates, 66 Minn. 131, 68 N. W. 845 (1896).